IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| TATYANA PAGE and ROBERT PINARD, | Case No. 6:16-cv-00888-AA |
| Plaintiffs, | OPINION AND ORDER |
| vs. | |
| ROUNDPOINT MORTGAGE SERVICING CORPORATION, | |
| Defendant. | |

AIKEN, Judge:

In this action, plaintiffs Tatyana Page and Robert Pinard allege that defendant RoundPoint Mortgage Servicing Corporation violated federal and state law when processing their application for loss mitigation programs in connection with the foreclosure of their residential home loan. Specifically, plaintiffs assert violations of federal regulations promulgated under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et. seq.*, and state regulations promulgated under Oregon's Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. §§ 646.605 *et. seq.* Defendant moved for summary judgment, and the Court heard oral argument on the motion on June 12, 2017. For the reasons set forth below, defendant's motion for summary judgment is granted in part and denied in part.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

In May 2013, plaintiffs obtained a mortgage loan in the amount of $158,112 from Premier Home Mortgage, Inc. ("Premier"), to finance their purchase of a residential property in Mill City, Oregon ("the property"). Def.'s Mot. Summ. J. Ex. A at 10–13 (doc. 12-1). The loan was secured by a promissory note and deed of trust, which gave Premier a first-priority lien against the property. *Id.* at 17–25. Premier later transferred its beneficial interest in the property to First Guarantee Mortgage Corporation. *Id.* at 4. Defendant became the loan servicer on July 15, 2013. *Id.*

In late 2014, a series of events caused plaintiffs' income to decline dramatically. After a car accident, Page developed a serious bone infection and required surgery. Def.'s Mot. Summ. J. Ex. C at 18. She had to take several months off work to recover. Page Dep. 74:4–8.[1] Around the same time, Page's ex-husband stopped paying child support. Page Dep. 75:9–13. Finally, Page's in-home caregiving client passed away, and several of her housekeeping clients moved away. Def.'s Mot. Summ. J. Ex. C at 18. In late 2014, plaintiffs defaulted on the loan. Compl. ¶ 4.

In February 2015, Page and a RoundPoint employee had a telephone conversation in which they discussed defendant's loan modification options. Page Dep. 78:18–23. Based on that conversation, Page believed she and Pinard qualified for loan modification but that they would have to submit paperwork to formalize their application. Page Dep. 79:10–12, 90:20–21. On March 31, 2015, plaintiffs sent an email telling defendant they would be submitting an application for loan modification. Def.'s Mot. Summ. J. Ex. A at 44. On April 4, 2015, plaintiffs faxed their application package to defendant. *Id.* at 43; Page Decl. ¶ 1 (doc. 15-1).

---

[1] Page's deposition is part of Exhibit C in the Appendix of Evidence filed in support of defendant's motion for summary judgment.

On April 7, 2015, defendant sent a letter to plaintiffs that stated: "This letter is to confirm receipt of your request for assistance. During our preliminary review of the information in your application that you supplied RoundPoint, we have determined that the following items are missing." Def.'s Mot. Summ. J. Ex. A at 47. The letter then asked plaintiffs to provide several documents, including signed and dated 2013 federal tax returns, an IRS form authorizing the release of tax returns, a copy of the most recent two months of bank statements, and documentation of Pinard's Social Security income. *Id.* The letter provided additional detail about some of the missing documents, explaining, for example, that Page had left lines 6, 6a and 9 on the IRS form blank, and that Pinard would need to fill out a separate IRS form. *Id.* The letter then stated that

> [u]pon receipt of all documents and information, we will continue evaluating your request for assistance. We ask that you send these documents to us no later than 30 calendar days from the date of this letter. If we do not receive the requested information within 30 calendar days of the date of this letter, your home assistance application may be denied and your application file will be closed.

*Id.* at 48. Finally, the letter provided the name and contact information of an assigned portfolio specialist, and urged plaintiffs to contact that person "[i]f you are not able to gather all of the information requested, or will not be able to provide all of this documentation and information to us within 30 calendar days of this letter[.]" *Id.*

Page called RoundPoint to clarify the requests in the letter. Page Dep. 92:14–25. Based on that conversation, she understood the application was incomplete and would need to be supplemented.

Over the next four months, plaintiffs faxed many more sets of documents, resulting in additional letters from defendant. The table below summarizes the parties' communications between April and August 2015:

| Date | Communication |
|---|---|
| April 4, 2015 | Plaintiffs faxed the first set of documents to defendant, as described in more detail above. |
| April 7, 2015 | Defendant sent the first missing documents letter to plaintiffs, as described in more detail above. |
| May 7, 2015 | Defendant sent a second missing documents letter to plaintiffs, requesting the same documents listed in the April 7 letter.[2] |
| June 18, 2015 | Plaintiffs faxed a second set of documents to defendant. Page stated that she submitted "all" the documents requested in the April 7 letter, but she did not recall precisely when. Defendant's internal records document a fax on June 18, 2015, which matches a date from Page's declaration.[3] |
| June 19, 2015 | Defendant sent a third missing documents letter to plaintiffs, requesting the same information listed in the April 7 and May 7 letters and adding a new request for a profit/loss statement from Page's business. Page understood the June letter to request "the same information that I already sent to them plus additional that has never been mentioned before." Some of the repeat requests stemmed from the fact that previously submitted documents had become outdated.[4] |
| June 30, 2015 | Plaintiffs faxed a third set of documents to defendant. Page inconsistently testified that she sent new documents and that she simply refaxed the documents she had already sent.[5] |

---

[2] Def.'s Mot. Summ. J. Ex. A at 50–51.

[3] *Id.* at 42; Page Decl. ¶ 1; Page Dep. 95:8–11, 97:1–4.

[4] Def.'s Mot. Summ. J. Ex. A at 53–54; Page Dep. 101:12–14.

[5] *Compare* Page. Dep. 105:1–5 (stating that she sent new documents and did not simply resend the same documents) *with* Page Dep. 27:4–6 ("They were basically the same thing as I already submitted. I just keep re-faxing the same thing.") *and* Page Dep. 108:10–12 ("They already had all the information that they kept asking for so I would resubmit it over and over what they were asking.")

| Date | Communication |
|---|---|
| July 2, 2015 | Defendant sent a fourth missing documents letter to plaintiffs, requesting the same documents requested in the June letter and adding a new request for an updated hardship affidavit.[6] |
| August 13, 2015 | Plaintiffs faxed a fourth set of documents to defendant.[7] |
| August 14, 2015 | Defendant sent plaintiffs a fifth missing documents letter, requesting the same documents as the June and July letters with the exception of the profit/loss statement. This letter added new requests for a financial form and documentation of plaintiffs' receipt of public assistance. The letter stated that financial documents including the explanation of hardship "must be dated within 90 days at the time of RoundPoint's receipt to be considered most recent and valid[.]" In addition, this letter stated that if a "complete Borrower Assistance Application is received within 37 days of a scheduled foreclosure sale," defendant would make "every effort" to expedite review of the application. However, the letter noted that "foreclosure sale postponement is not guaranteed."[8] |

On September 16, 2015, having received no further documents from plaintiffs, defendant recorded a Notice of Default and Election to Sell.[9] Request J. Notice Ex. B at 1 (doc. 13). The foreclosure sale was scheduled to take place January 14, 2016. Request J. Notice Ex. C at 6. Plaintiffs received the trustee's Notice of Sale. Compl. ¶ 7.

---

[6] Def.'s Mot. Summ. J. Ex. A at 58–59.

[7] *Id.* at 39; Page Decl. ¶ 1.

[8] Def.'s Mot. Summ. J. Ex. A at 63–64.

[9] Defendant asks the Court to take judicial notice of three facts: (1) that April 4, 2015, was a Saturday; (2) that a Notice of Default and Election to sell the property was recorded in Marion County on September 16, 2015; and (3) that a set of documents related to the foreclosure was recorded in Marion County on December 11, 2015. Defendant's motion for judicial notice (doc. 13), which is unopposed, is granted because those facts are appropriate subjects for judicial notice because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Chancey v. Wash. Mut. Assetbacked Certificates WMABS Series 2007-HE2 Trust Issuing Entity*, 2010 WL 3001178, at *1 (D. Or. Jul. 27, 2010) (judicially noticing a similar set of foreclosure documents).

On December 21, 2015, less than a month before the scheduled foreclosure sale, plaintiffs faxed a fifth set of documents to defendant. Def.'s Mot. Summ. J. Ex. C at 40. On December 23, 2015, Roundpoint employee Jody Picton contacted plaintiffs by email to inform them that their application was still incomplete. Def.'s Mot. Summ. J. Ex. A at 36. On December 30, 2015, a second email to plaintiffs reiterated that the application was incomplete and listed the missing documents. Def.'s Mot. Summ. J. Ex. B at 17. The email included step-by-step instructions for completing the requested IRS form. *Id.* at 18. Also on December 30, defendant postponed the foreclosure sale one day, to January 15, 2016. Def.'s Mot. Summ. J. Ex. A at 36.

On January 13, 2016, plaintiffs emailed Picton noting that the foreclosure sale was only two days away and that they had not received notice about the results of their application. Def.'s Mot. Summ. J. Ex. B at 17. Picton responded the same day, explaining that the application was incomplete, relisting the same documents requested in the December 30 email, and asking plaintiffs to call in to complete a financial review. *Id.* at 16. Plaintiffs replied by two separate emails, attempting to submit additional documents. *Id.* at 16, 21. Picton responded to those emails to inform plaintiffs that the documents had been incorrectly attached. *Id.* at 21.

On either January 14, 2016 (the day before the foreclosure sale) or early the morning of January 15, 2016 (the day of the foreclosure sale), plaintiffs faxed a sixth set of documents to defendant. Def.'s Mot. Summ. J. Ex. C at 47–53. On January 15, 2016, defendant sent plaintiffs a letter stating that their loan modification application was complete and would be evaluated. Def.'s Mot. Summ. J. Ex. A at 68–69. That letter contained the same boilerplate language as the August letter, stating that defendant would attempt expedited processing for applications received more than 37 days before a foreclosure sale and that a foreclosure postponement was

not guaranteed. Notwithstanding defendant's receipt of plaintiffs' complete application, the foreclosure auction proceeded as scheduled and the property was sold for $142,100. *Id.* at 71.

On February 17, 2016, defendant sent plaintiffs a letter stating that they did not qualify for any assistance programs other than pre-foreclosure sale and deed in-lieu of foreclosure, both of which were moot as the property already had been sold. *Id.* at 76–82. On May 17, 2016, defendant sent plaintiffs a final letter, stating that plaintiffs were not eligible for any assistance programs. *Id.* at 84–85.

Page alleges that throughout the application process, defendant assured her that it would stop the sale once their application was complete. Page Decl. ¶ 3. Plaintiffs assert that they would have attempted to sell the property if she had known their application would be denied and defendant would foreclose. Page Decl. ¶ 5; Pinard Decl. ¶ 5 (doc. 15-2). They further state that they were harmed by their reliance on the loan modification program because the property sold at auction for more than $100,000 less than its fair market value. Page Decl. ¶ 6; Pinard Decl. ¶ 6.

## STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

**DISCUSSION**

I. *Timeliness of Plaintiffs' Opposition*

Defendant filed its motion for summary judgment on March 23, 2017. Pursuant to this Court's local rules, plaintiffs' response with due within twenty-one days, on April 13, 2017. *See* L.R. 7(f)(1). Plaintiffs filed their response and accompanying declarations one day late, on April 14, 2017. Defendant asked the Court to treat its motion for summary judgment as unopposed, strike plaintiffs' opposition brief and declarations in their entirety, and/or find that plaintiffs waived their right to oral argument. I will not impose such harsh penalties based on a delay of a single day.[10]

II. *RESPA Claims*

RESPA regulations impose procedural requirements on lenders regarding "loss mitigation options" for borrowers facing foreclosure. 12 C.F.R. § 1024.41. Plaintiffs contend that defendant violated those RESPA regulations by failing to timely (1) notify them it had received their loss mitigation application and state in writing whether the application was

---

[10] Defendant also moved to strike plaintiffs' declarations on other grounds. The motion to strike (doc. 16) is denied in its entirety. Plaintiffs' affidavits are properly grounded in personal knowledge and meet the broad relevance test set out in Federal Rule of Evidence 401. It is true that some of plaintiffs' statements are vague or conclusory. As the cases cited by defendant in its motion to strike establish, vague or conclusory statements in sworn affidavits are insufficient to create triable issues of material fact at the summary judgment stage. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993); *United States v. 1 Parcel of Real Property*, 904 F.2d 487, 492 n.3 (9th Cir. 1990). But neither of those cases involved a motion to strike. I conclude that striking the affidavits is unnecessary because the Court is well-equipped to determine when a statement in an affidavit is specific enough to create a question of material fact. Finally, defendant's hearsay objection to Page's statements about representations made by RoundPoint employees has no merit because admissions of an opposing party are not hearsay. *See* Fed. R. Evid. 801(d)(2)(D).

complete or incomplete; and (2) evaluate their complete loss mitigation application and provide a specific notice of approval or denial.

A. *Application Receipt and Completeness Notification*

Plaintiffs' first argument, regarding receipt of their application and evaluation of its completeness, presents the easier question. Under RESPA's regulations, when a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, the servicer must

> Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section.

12 C.F.R. § 1024.41(b)(2)(i).

Section 1024.41(b)(2)(i) applies to defendant's receipt of a loss mitigation application 45 days or more before a foreclosure sale; here, because the foreclosure sale was initially scheduled for January 14, 2016, the regulation applies to communications received before November 30, 2015. Within that timeframe, the summary judgment record unequivocally shows that each time plaintiffs' submitted application materials, defendant evaluated those documents and responded within the five-day window. Specifically, defendant issued an April 7 letter in response to documentation received April 4;[11] a June 19 letter in response to documentation received June

---

[11] Plaintiffs initially alleged that Page faxed the initial set of documents "on or about" March 27, 2015. Compl. ¶ 5. If that date were correct, defendant would have violated 12 C.F.R. § 1024.41(b)(2)(i)(B) because its first written response to plaintiffs' application is dated April 7, 2015, more than five days after March 27. However, at her deposition Page was unsure exactly when she submitted the initial application packet. Page Dep. 76:9–81:22. Defendant's internal logs document receipt of documents by fax April 4, 2015. Mot. Summ. J. Ex. A at 43 & 44. In her declaration, Page omits any mention of March 27, 2015, and lists the April 4 date as the first

PAGE 9 – OPINION AND ORDER

18; a July 2 letter in response to documentation received June 30; and an August 14 letter in response to documents received August 13.[12] Each of these letters clearly stated that plaintiffs' application was incomplete and listed documentation necessary to complete the application. In addition, plaintiffs appear to have abandoned this argument as their response to the motion for summary judgment does not mention it at all. Defendant is therefore entitled to summary judgment with respect to the claims under 12 C.F.R. § 1024.41(b)(2)(i)(B).

B. *Application Processing and Eligibility Notification*

Plaintiffs' second RESPA argument, regarding timely processing of a complete loss mitigation application, presents a closer question. If a servicer receives a "complete loss mitigation application" more than 37 days before a foreclosure sale, the servicer must evaluate the borrower's eligibility for loss mitigation options and inform the borrower, in writing, of any eligibility determination with respect to such options. *Id.* § 1024.41(c)(1)(i)–(ii). The written notice must be provided to the borrower within 30 days after the service receives the complete application. *Id.* § 1024.41(c)(1). Further, if the borrower is denied a loan modification, the servicer must state in the notice "the specific reason or reasons" for that decision. *Id.* § 1024.41(d). The regulations define "complete loss mitigation application" as

> an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

---

specific date on which she faxed documents to defendant. Page Decl. ¶ 1. The summary judgment record thus establishes that defendant complied with 12 C.F.R. § 1024.41(b)(2)(i)(B)'s timeliness requirement in connection with its initial response to plaintiffs' application.

[12] The next communication after August 14 took place on December 21. 12 C.F.R. § 1024.41(b)(2)(i) does not apply to that communication or to any subsequent communications because they took place within 45 days of the foreclosure sale.

*Id.* § 1024.41(b)(1).

It is undisputed that defendant did not process plaintiffs' loss mitigation application until after the foreclosure auction. The issue is whether, on the evidence in the summary judgment record, a jury could conclude that plaintiffs' application was "complete" before the 37-day pre-foreclosure sale period began, triggering the requirements of 12 C.F.R. §§ 1024.41(c)(1) & (d).

In her deposition testimony, Page was unable to connect particular documents to dates of submission. Page produced some fax confirmation pages, but those pages are only evidence that *some* documentation was sent on a particular date; they do not show *which* documents were sent on any given date. For example, defense counsel cited a June 17, 2015, document confirming a thirteen-page fax and asked Page if she recalled which documents she sent on that date. Page Dep. 28:8–15. Page responded that she sent "[w]hatever they requested for" but admitted she could not recall exactly which documents were included in the fax. Page Dep. 28:16–18. In her declaration, Page asserted that she faxed documents in connection with her loss mitigation application on "multiple occasions including April 4, May 7, June 18, June 30, and August 13, 2015," but does not specify which documents she submitted on any particular date. Page Decl. ¶ 1. Pinard's declaration is similarly nonspecific, stating only that he knows Page "faxed documents to Roundpoint on multiple occasions in 2015." Pinard Decl. ¶ 2.

Page did, however, broadly state in her declaration that she submitted "all" the documents defendant requested. Page Decl. ¶ 1. She also denied failing to submit required documents. *Id.* In her deposition, Page more narrowly asserted that she provided defendant with "all" the documents requested in the April 7 letter. Page Dep. 95:8–11. Those assertions are the only evidence that plaintiffs' loan mitigation application was complete before the 37-day pre-foreclosure period began.

PAGE 11 – OPINION AND ORDER

In the Ninth Circuit, self-serving affidavits can establish a genuine issue of material fact "so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001). However, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978).

In *Rodriguez*, 265 F.3d at 893, the plaintiff sued his former employer for disability discrimination. The Ninth Circuit concluded that the plaintiff had failed to exhaust his administrative remedies. *Id.* at 898. However, the court concluded that an equitable exception to exhaustion would apply if, as the plaintiff alleged, the California Department of Fair Employment and Housing had misled him into thinking that he could not pursue a disability discrimination charge. *Id.* at 900. The defendant employer argued that because the only evidence the plaintiff had been misled came from his own "self-serving affidavit," there was no triable issue of fact sufficient to withstand a motion for summary judgment. *Id.* at 902. The court rejected such a contention, holding that because the plaintiff "set forth the facts of his [agency] interview with great specificity," there was sufficient evidence to permit a trier of fact to conclude he had been misled. *Id.*

*Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1107 (9th Cir. 2003), was another employment discrimination case. The question before the court was whether certain promotion decisions had happened within the relevant statute of limitations, which barred any claims arising out of decisions made before August 30, 1998. *Id.* at 1116. The plaintiff submitted an affidavit stating that several of the promotion decisions had "occurred in 'late 1998' or 1999," but the affidavit contained "no support for these asserted dates other than [the plaintiff's] declaration" and "offer[ed] no specific dates for any of the actions." *Id.* The court found such nonspecific,

conclusory allegations could not create a triable issue of fact, and granted the defendant's motion for summary judgment.

Here, Page's repeated, nonspecific assertion that she submitted "all" the documentation defendant requested is more like the statements in *Hernandez* than the statements in *Rodriguez*. It is therefore insufficient to carry plaintiffs' RESPA claims about the processing of a complete application beyond summary judgment.

It is clear from the summary judgment record that the loss mitigation application process was confusing and frustrating, particularly for Page, for whom English is a second language. Many of the letters state that some already submitted documents have become outdated and require the submission of new versions of the same documents. Borrowers receiving such notices understandably could feel that the goalposts were continually being moved and that, in retrospect, they had no real or meaningful chance at loss mitigation.

But it is not the job of the courts to decide if the defendant's conduct was the best practice. Courts must decide the narrower question of whether the defendant violated the law. Here, a jury could certainly infer from the summary judgment record that Page did her best to follow defendant's instructions and believed she had submitted all the documentation requested. But under Ninth Circuit precedent, there is simply insufficient evidence in the summary judgment record to permit a factfinder to conclude that plaintiffs *actually submitted* all the necessary documentation before the 37-day pre-foreclosure period began. Because a jury could not find that plaintiffs have proved their application was complete before that period began, plaintiffs' RESPA claims under 12 C.F.R. §§ 1024.41(c)(1) & (d) cannot proceed beyond summary judgment.

III. *UTPA Claims*

Oregon's UTPA establishes a private right of action for persons who have suffered "an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful" by the UTPA. Or. Rev. Stat. § 646.638(1). The statute provides for "actual damages or statutory damages of $200, whichever is greater," as well as for punitive damages and equitable relief. *Id.* The law enumerates dozens of specific unlawful trade practices, ranging from representing that goods for sale are new when they are, in fact, used; making misleading representations about prizes, contests or promotions in connection with a business or service; and selling a thermostat that contains mercury without clearly disclosing that fact to the purchaser. *Id.* § 646.608. The statute also includes a catchall provision which provides that "any other unfair or deceptive conduct in trade or commerce" is an unlawful trade practice. *Id.* § 646.608(1)(u). A plaintiff can sue under the catchall provision only if the Oregon Attorney General has established a specific rule declaring the conduct at issue in the lawsuit to be "unfair or deceptive in trade or commerce." *Id.* § 646.608(4).

Pursuant to her authority under Or. Rev. Stat. § 646.608, the Oregon Attorney General promulgated regulations to address "unfair and deceptive acts in mortgage loan servicing." Or. Admin. R. 137-020-0805 (capitalization normalized). As relevant to plaintiffs' claims, those regulations provide that a mortgage loan servicer has engaged in "unfair or deceptive conduct in trade or commerce" if the servicer "[m]isrepresents to a borrower any material information regarding a loan modification," *id.* 137-020-0805(3) or "[f]ails to deal with a borrower in good

faith," *id.* 137-020-0805(6).[13] The regulations define "good faith" as "honesty in fact and the observance of reasonable standards of fair dealing." *Id.* 137-020-0800(2).

### A. *Supplemental Jurisdiction over Pendent State Law Claims*

Because defendant is entitled to summary judgment on all federal claims, I first consider whether to exercise supplemental jurisdiction over plaintiffs' remaining state claims. Neither party raised the issue of supplemental jurisdiction, so such an analysis is not required. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). But the Ninth Circuit has stated that when it comes to supplemental jurisdiction over state claims, "the proper administration of justice is far better served by a deliberate decision than by default." *Id.* at 1001. I therefore address the question *sua sponte*.

28 U.S.C. § 1367(a) provides the basis for supplemental jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The court has discretion to "decline to exercise" supplemental jurisdiction in various circumstances, including when "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3).

The Supreme Court has explained that in the "usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

---

[13] Plaintiffs also allege that defendant violated Or. Admin. R. 137-020-0805(5), which makes it an unlawful trade practice to violate certain provisions of RESPA. As explained in Section II of this opinion and order, defendant is entitled to summary judgment on plaintiffs' RESPA claims. Plaintiffs' claim under Or. Admin. R. 137-020-0805(5) therefore necessarily fails.

343, 350 n.7 (1988). But there is no "mandatory rule to be applied inflexibly in all cases." *Id.* Ultimately, whether to retain jurisdiction when section 1367(c) is triggered remains a discretionary decision, informed by considerations of "economy, convenience, fairness, and comity." *Acri*, 114 F.3d at 1001 (quotation marks omitted).

Under the circumstances presented here, I find that the values enumerated above weigh in favor of retaining jurisdiction over the state UTPA claims. Discovery is complete and the summary judgment motions have been fully briefed and argued. It would be a waste of judicial resources to require the parties to start over in state court on the UTPA claims. More importantly, the plaintiffs' UTPA claims present no novel or difficult questions of state law, instead turning primarily on questions of fact such as the fair market value of plaintiffs' property, what constitutes good faith, and whether defendant made any material representations. I will continue to exercise supplemental jurisdiction over plaintiffs' UTPA claims.

B. *Merits of UTPA Claims*

Defendant argues that plaintiffs' UTPA claims cannot proceed for three reasons.[14] First, defendant argues that plaintiffs cannot prove they were damaged by defendant's behavior. That assertion is belied by the record. Plaintiffs state in their affidavits that (1) they would have explored the possibility of a short sale had they known that defendant was going to sell the house

---

[14] As defendant correctly notes, plaintiffs' UTPA claims are subject to a one year statute of limitations. Or. Rev. Stat. § 646.638(6). Plaintiffs filed this lawsuit on May 20, 2016, which means that the parties' early communications about loss mitigation, including the February phone call, plaintiffs' April application, and defendant's April and May missing documents letters, fall outside the limitations period. Even though those events are not actionable by themselves, however, they may be considered in interpreting the events that took place within the limitations period. *Cf. N.L.R.B. v. United Bhd. of Carpenters & Joiners of Am., Local 745, AFL-CIO*, 450 F.2d 1255, 1256 (9th Cir. 1971) (noting that the statute of limitations in the National Labor Relations Act is "not a rule of evidence" and approving consideration of events outside the statute of limitations to the extent they "might . . . throw[] light on the specific conduct within the period at issue").

at auction and (2) the sale price at auction was more than $100,000 below the property's fair market value. Page Decl. ¶¶ 5–6; Pinard Decl. ¶¶ 5–6. Such a loss of equity, if proven, plainly qualifies as an ascertainable loss of money or property within the meaning of the UTPA.

Second, defendant avers that plaintiffs cannot show that the purported loss of equity was caused by defendant's allegedly unlawful trade practices. Defendant contends that plaintiffs' default caused the foreclosure sale. That argument, too, misses the mark. Plaintiffs argue that defendant strung them along, leading them to believe that they qualified for payment restructuring and that the foreclosure sale would be stopped as soon as their application was complete. They further contend that had they not believed the foreclosure sale would be stopped, they would have pursued a short sale, which would have protected some of their equity. In other words, but for defendant's representations about the loss mitigation options, plaintiffs would have taken other steps to limit their losses. Viewing the evidence in the light most favorable to plaintiffs, there is sufficient proof of causation.

Finally, defendant asserts that nothing in the summary judgment record creates a question of material fact regarding a *willful* violation of the UTPA regulations. Defendant insists that the record shows that it always provided correct information to plaintiffs, who simply did not manage to submit a complete application package within a reasonable timeframe. I agree that a jury could reach that conclusion based on the summary judgment record. Plaintiffs, however, advance a different reading of the evidence. They contend that they were led to believe that they would definitely qualify for loss mitigation; that defendant sent hypertechnical, confusing notices about what paperwork was missing; that defendant continued to send the same confusing notices even though plaintiffs were clearly struggling to comply with the requests in those notices; that communications were made more difficult by language barriers; and that defendant moved

forward with a foreclosure sale even after plaintiffs' loss mitigation application was complete. Viewing the evidence in the light most favorable to plaintiffs, a jury could conclude that defendant willfully misrepresented material information to plaintiffs or willfully failed to deal with plaintiffs in good faith. Because the record is open to multiple interpretations, summary judgment is inappropriate on the UTPA claims.

## CONCLUSION

Defendant's Motion for Summary Judgment (doc. 12) is GRANTED in part, with respect to plaintiffs' RESPA claims. Defendant's Motion for Summary Judgment is DENIED with respect to plaintiffs' UTPA claims. Defendant's request for judicial notice (doc. 13) is GRANTED. Defendant's motion to strike (doc. 16) is DENIED.

At oral argument, the parties expressed interest in a settlement conference. The parties are directed to contact Paul Bruch, Courtroom Deputy to Judge Thomas Coffin, at (541) 431-4111 or Paul_Bruch@ord.uscourts.gov within fourteen days of the date of this opinion and order to schedule a settlement conference.

Dated this 29 day of June 2017.

Ann Aiken
United States District Judge